UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMY WERT,

        Plaintiff,                                Case No. 3:15-cv-83

vs.

COMMISSIONER OF                          District Judge Walter H. Rice
SOCAL SECURITY,                           Magistrate Judge Michael J. Newman

        Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS CASE BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and thus unentitled to Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 9), Plaintiff's reply (doc. 10), the administrative record (doc. 6),[2] and the record as a whole.

I.

A. **Procedural History**

Plaintiff filed for SSI on January 19, 2012. PageID 216-21. Plaintiff suffers from a number of impairments including, among others, respiratory disorder, depression, and borderline intellectual functioning ("BIF"). PageID 72.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

After initial denials of her application, Plaintiff received a hearing before ALJ Elizabeth A. Motta. PageID 96-125. The ALJ issued a written decision on October 4, 2013 finding Plaintiff not disabled. PageID 70-86. Specifically, the ALJ's findings were as follows:

1. The claimant has not engaged in substantial gainful activity since January 19, 2012, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: respiratory disorder (obstructive sleep apnea with mild asthma); obesity; headaches; depression; anxiety disorder; and [BIF] and/or learning disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform less than the full range of light work as defined in 20 CFR 416.967(b):[3] lift up to 20 pounds occasionally and 10 pounds frequently; only occasional postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching or crawling; only occasional overhead reaching on the left; no climbing ropes, ladders or scaffolds; no exposure to hazards, such as dangerous machinery or working at unprotected heights, no exposure to vibration; indoor work with no extremes of heat, cold, wetness or humidity; clean-air environment with no concentrated exposure to dust, odors, fumes, gases, or poorly-ventilated areas; simple, repetitive tasks; low stress work with no strict production quotas or fast pace and only routine work with few changes in the work setting; no contact with the public; only occasional contact with coworkers and supervisor, including no over-the-shoulder supervision or teamwork; and jobs not requiring greater than 5th grade reading or arithmetic.

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 416.967. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 416.967(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 416.967(a).

5. The claimant is unable to perform any [of her] past relevant work (20 CFR 416.965).

6. The claimant was born [in] 1978 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 19, 2012, the date the application was filed (20 C.F.R. 416.920(g)).

PageID 72-85.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 51-53. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B. **Evidence of Record**

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 72-84. Plaintiff and the Commissioner also summarize the evidence in their respective briefing before the Court. Doc. 8 at PageID 1726-35; doc. 9 at PageID 1747-51. Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned

incorporates the ALJ's recitation of evidence as well as the summaries provided by the parties. Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are "medically determinable"; expected to result in death or which have lasted or can be expected to last for a continuous period of not less than twelve months; and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful work" that is available in the regional or national economies. *Id*. §§ 1382c(a)(3)(A), (B).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). Claimants bear the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in: (A) finding she did not meet or equal Listing § 12.05(C); (B) weighing the medical opinion evidence; and (C) finding her not credible. Doc. 8 at PageID 1725. These arguments are addressed in turn.

**A.     Listing § 12.05(C)**

Plaintiff first argues that the ALJ erred at Step Three of the sequential benefits analysis by concluding that her impairments do not meet or medically equal Listing § 12.05(C). Doc. 8 at PageID 1736-38. The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). "Because satisfying the [L]istings yields an automatic determination of disability . . . the evidentiary standards [at Step Three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Plaintiff has the burden of proving that he or she meets or equals all of the criteria of a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

Listing § 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
> . . .
>
> (C)     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In other words, for a claimant to meet Listing § 12.05, he or she must meet the criteria under subsection A, B, C, or D, as well as "satisfy the diagnostic description" in the introductory paragraph, *i.e.*, "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (internal citations omitted).

"The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Id.* at 677 (internal citation omitted). Although Listing § 12.05 does not define "adaptive functioning," another portion of the Listings defines "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1). The plain language of the Listing also does not identify how severe limitations must be to qualify as "deficits in adaptive functioning." *Pendleton v. Comm'r of Soc. Sec.*, No. 1:10-cv-650, 2011 WL 7070519, at *11 (S.D. Ohio Dec. 23, 2011). Nevertheless, case law from the Sixth Circuit and other federal courts suggests that a claimant must have relatively significant deficits to satisfy the Listing. *See Farnsworth v. Comm'r of Soc. Sec.*, No. 2:13-cv-923, 2015 WL 1476458, at *9 (S.D. Ohio Mar. 31, 2015) (collecting cases).

Here, with regard to Listing § 12.05(C), the ALJ found that:

> education records from Greenville City Schools show low grades, developmental handicapped classes, and an Individualized Education Plan. However, the record lacks evidence of significantly subaverage general intellectual functioning. When consultative psychologist Giovanni Bonds, Ph.D. evaluated the claimant in June 2008 (prior application), she reported the following scores on the WAIS-III intelligence scale: Verbal IQ - 66; Performance IQ - 75; and Full Scale IQ - 67. However, Dr. Bonds noted that the claimant seemed to work quickly and carelessly during testing, showed lack of effort, and she opined that the claimant's scores likely underestimated her ability. She indicated the same with regard to the

> claimant's performance on reading and math testing (mid fourth grade and mid third grade, respectively). While she diagnosed mild mental retardation, this cannot be considered consistent with her findings of poor effort.
>
> When consultative psychologist Dr. Boerger evaluated the claimant in April 2012, the claimant could not perform single digit division, but she was able to perform single digit addition, subtraction, and multiplication. The claimant told Dr. Boerger that she was at a 6th grade level in reading and that she could read the newspaper. Although the claimant demonstrated some difficulty with cognitive testing on mental status exam, her performance was adequate overall. Dr. Boerger ultimately diagnosed only [BIF], not mental retardation. Moreover the record does not show significant deficits in adaptive functioning. As discussed below, the claimant raised three children, helps them get ready for school, manages her household, and enjoys activities including arts, crafts, and cross stitching. She testified at the hearing that she could read and write a little. Some of her past relevant work was semiskilled and she has a driver's license and drives as needed. For all of these reasons, the undersigned finds that the record does not show the significantly subaverage intellectual functioning required by section 12.05.

PageID 75-76 (citations to exhibits omitted).

Substantial evidence supports the ALJ's Listings analysis. Although Plaintiff arguably satisfies the criteria under subsection (C) -- with a Full Scale Intelligence Quotient ("IQ") of 69 prior to age 22,[4] PageID 939, and several physical and mental impairments that the ALJ found to be "severe" at Step Two, PageID 72 -- the ALJ reasonably concluded that Plaintiff does not meet the "deficits in adaptive functioning" prong in the introductory paragraph of Listing § 12.05. PageID 75; *see Kent v. Comm'r of Soc. Sec.*, No. 3:14-cv-285, 2015 WL 569642, at *5 (S. D.

---

[4] The ALJ reasonably concluded that qualifying scores reported from testing in 2008 by consultative examiner Giovanni M. Bonds, Ph.D. did not constitute "evidence of significantly subaverage general intellectual functioning." PageID 75, 311. Dr. Bonds expressly discredited the scores several times in her opinion. *See* PageID 310 ("[t]esting took only an[]hour and a half to complete when on average it should take two to two and a half hours to complete"); PageID 311 ("[t]hese scores may be an underestimate of her abilities due to careless answering and a lack of effort"); PageID 312 ("[d]uring testing, [Plaintiff] seemed to work quickly and carelessly"). To the extent that the ALJ erred in not considering qualifying IQ scores from Plaintiff's developmental period in her Listing analysis, *see, e.g.*, PageID 939, the Court finds any such error harmless in light of the ALJ's conclusion, supported by substantial evidence, that Plaintiff does not have the requisite deficits in adaptive functioning.

Ohio Sept. 29, 2015). In so finding, the ALJ considered that Plaintiff raises her children and helps them get ready for school and with homework; manages her household (including cooking, washing dishes, laundry, vacuuming, and grocery shopping); has a driver's license and drives as needed; and that some of Plaintiff's past relevant work was semiskilled. PageID 75-76, 106-08, 110. Also supporting the ALJ's conclusion is consultative examiner Alan R. Boerger, Ph.D.'s 2012 diagnosis of BIF. PageID 533.

Accordingly, although there is evidence upon which the ALJ could have relied to find that Plaintiff met or equaled Listing § 12.05(C) -- including her difficulties with reading and writing, PageID 112; and Dr. Bonds's 2008 opinion, PageID 307-14 -- substantial evidence supports the ALJ's ultimate conclusion at Step Three. *See Peterson,* 552 F. App'x at 539; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[e]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to the ALJ's decision if it is supported by substantial evidence). The undersigned therefore recommends that Plaintiff's first assignment of error be overruled.

### B. Medical Opinion Evidence

Next, Plaintiff argues that the ALJ erred in weighing the medical opinion evidence, including opinions from her treating physician, Carlos Menendez, M.D., and treating therapists, Cynthia Holloway, L.P.N. and Stacy Fellers, M.S., P.C.C. Doc. 8 at PageID 1738-43. "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id.* "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id.* "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source

opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 416.9227(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.*

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 416.927(c).   In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]"  *Walton v. Comm'r of Soc. Sec*., No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Plaintiff's treating physician, Dr. Menendez, provided three opinions in 2012, including responses to a set of medical interrogatories on July 17, 2012.  PageID 493-95, 673-74, 1633-40. On that date, Dr. Menendez stated that he had treated Plaintiff for over ten years for conditions including coronary disease, osteoarthritis, depression, migraine headaches, and sleep apnea. PageID 1633-34.  He opined that Plaintiff's "physical limitations limit her ability to keep up with a normal work regimen [and] [h]er depression causes her to have a reduced ability to handle stressful environments.  She has difficulty concentrating."  PageID 1635.  Dr. Menendez limited Plaintiff's ability to lift, push, and perform postural activities, and opined that Plaintiff is unable, on a sustained basis, to be prompt and regular in attendance; withstand normal productivity standards; demonstrate reliability; complete a normal work day or week without interruption from her symptoms; and perform at a consistent pace.  PageID 1635-37.  Finally, Dr. Menendez opined that Plaintiff will likely miss work over three times per month, and is unable to perform

light or sedentary work. PageID 1640. The vocational expert ("VE") testified that a hypothetical worker who was absent three or more times per month could not maintain employment. PageID 124.

The ALJ afforded "little weight" to Dr. Menendez's opinion because:

> Although he has been [Plaintiff's] primary care physician since 2012, his opinion is unsupported by objective signs and findings in the preponderance of the record. As discussed above, Dr. Menendez's progress notes primarily document the claimant's subjective complaints and generally show normal examination findings . . . . Further, Dr. Menendez indicated that he limited [Plaintiff's] postural activities due to arthritis, but the record contains no objective findings of arthritis. The limitations for lifting, pushing, and pulling were provided shortly after [Plaintiff's] cardiac spasm, but there is no evidence of a significant cardiac condition after that time[]. The undersigned also gives little weight to Dr. Menendez's opinion regarding [Plaintiff's] abilities in the areas of concentration, task persistence, and stress tolerance, because Dr. Menendez is an internist and is unqualified to offer an opinion on the claimant's level of mental functioning. There is certainly no rational explanation medically for his saying in July 2012 that she had no limitations in sitting, standing, or walking but only a month later that she could stand for only 20 minutes and her ability to walk was extremely limited . . .

PageID 82 (citations to exhibits omitted).

The undersigned finds no error in regard to the ALJ's analysis of Dr. Menendez's opinion regarding Plaintiff's physical limitations,[5] but agrees with Plaintiff that the ALJ erred in analyzing his opinion concerning Plaintiff's mental impairments. The sole reason the ALJ gave for rejecting Dr. Menendez's mental-health related restrictions -- including the disabling absenteeism limitation based on the sum of Plaintiff's impairments and treatment, PageID 124, 1640 -- is that Dr. Menendez is an internist. PageID 82. However, Dr. Menendez's lack of

---

[5] In discounting Dr. Menendez's opinion as to Plaintiff's physical limitations, the ALJ properly relied on the lack of objective findings in Dr. Menendez's treatment notes, as well as the unexplained inconsistency between the limitations in his July 2012 and August 2012 opinions. PageID 673-74, 1633-40; *see Haynes v. Astrue*, No. 1:11-cv-185, 2012 WL 174716, at *5-6 (S.D. Ohio Jan. 20, 2012).

mental-health specialization[6] does not disqualify him from opining as to Plaintiff's mental status. *See Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *14 n.5 (S.D. Ohio Apr. 14, 2008). Furthermore, in rejecting Dr. Menendez's opinion on that basis, the ALJ failed to discuss his treatment of Plaintiff's mental health conditions, including through medication. PageID 82, 104.

Additionally, the ALJ erroneously stated that Dr. Menendez had been Plaintiff's primary care physician since 2012 when, instead, Dr. Menendez had treated Plaintiff for over ten years at the time he gave his July 2012 opinion. PageID 82, 1633. The ALJ thus failed to consider the considerable length of the treatment relationship -- a factor weighing in favor of according Dr. Menendez's opinion deferential, if not controlling, weight -- and how Dr. Menendez could provide the "detailed, longitudinal picture of [Plaintiff's] medical impairment[,]" as contemplated by the regulations. 20 C.F.R. § 416.927(c)(2).

Finally, in weighing Dr. Menendez's opinion regarding Plaintiff's mental impairments, the ALJ failed to discuss its consistency with the opinions of therapists Fellers and Holloway, who each found several mental health-related limitations. *See* PageID 536-40, 1376-85; 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *see also Howard v. Comm'r of Soc. Sec.,* No. 3:14-cv-335, 2015 WL 7252553, at *5 (S.D. Ohio Nov. 17, 2015) *Report and Recommendation adopted,* 2015 WL 8014515 (S.D. Ohio Dec. 7, 2015) (reversing, in part, due to the ALJ's failure to note the consistency between the treating psychiatrist's opinion and opinions of a treating counselor and treating social worker). Notably, therapist Holloway opined that Plaintiff would miss work at

---

[6] As the Ninth Circuit has noted, "[w]hile the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training programs in psychiatry . . . it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (internal and external citations omitted).

least three times per month -- as did Dr. Menendez -- and experiences "marked" or "extreme"[7] functional limitations as a result of her mental impairments. PageID 1388.

Based upon the foregoing, the undersigned finds that the ALJ failed to properly assess and give good reasons, supported by substantial evidence, for discounting the mental health opinion of Plaintiff's long-time treating physician. *See Blakley*, 581 F.3d at 409-10 (holding that "the Commissioner must follow his own procedural regulations in crediting medical opinions"). Accordingly, the ALJ's non-disability finding must be reversed.[8]

### C. Credibility Assessment

Finally, Plaintiff contends that the ALJ improperly found her less than fully credible. Doc. 8 at PageID 1743-44. Finding remand warranted on other grounds, *see supra*, the undersigned makes no finding with regard to this alleged error. Instead, Plaintiff's credibility should be assessed by the ALJ anew on remand.

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits.

---

[7] "Marked" and "extreme" limitations are suggestive of disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq.*

[8] Plaintiff also argues that the ALJ erred in rejecting the opinions of therapists Fellers and Holloway. Doc. 8 at PageID 1740-43. While therapists and mental health counselors are not "acceptable medical sources" whose opinions can establish whether a claimant has a "medically determinable impairment [,]" they do qualify as "other sources," and their opinions may be used by an ALJ "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work[.]" 20 C.F.R. §§ 416.913(a) and (d); *see also Covucci v. Apfel*, 31 F. App'x 909, 913 (6th Cir. 2002); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Other source opinions are entitled to consideration by an ALJ, and an ALJ's decision should reflect such consideration. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *see also* Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). In other words, an ALJ "should explain the weight given to [such] opinions...or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p, 2006 WL 2329939, at *6; *see also Cruse*, 502 F.3d at 541. The undersigned finds the ALJ's analysis of therapists Fellers and Holloway proper under the foregoing standard. *See* PageID 83-84. However, because remand is warranted due to the ALJ's analysis of Dr. Menendez's opinion, *see supra*, the ALJ should assess these "other source" opinions anew on remand.

Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this instance, evidence of disability is not overwhelming in light of conflicting opinions in the record concerning Plaintiff's functional limitations. Accordingly, the undersigned concludes that remand for further proceedings is necessary so the ALJ can reasonably and meaningfully weigh all opinion evidence, assess Plaintiff's credibility, and determine Plaintiff's disability status anew.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This case be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date: February 8, 2016              *s/ Michael J. Newman*
                                    Michael J. Newman
                                    United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).